# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

### MONROE DIVISION

| | | |
|---|---|---|
| WILLIAM A. MUSE | * | CIVIL ACTION NO. 09-1250 |
| VERSUS | * | JUDGE ROBERT G. JAMES |
| BRIAN NEWCOMER, WARDEN | * | MAGISTRATE JUDGE KAREN L. HAYES |

### REPORT AND RECOMMENDATION

Before the court is a petition for writ of *habeas corpus*, 28 U.S.C. § 2254, filed on July 24, 2009 [docs. # 1, 2] by *pro se* petitioner William Muse.  Petitioner is an inmate in the custody of Louisiana's Department of Public Safety and Corrections.  He is incarcerated at Concordia Parish Work Release, Vidalia, Louisiana, where he is serving a seven-year hard labor sentence imposed following his 2007 conviction for possession with intent to distribute cocaine in Louisiana's Fourth Judicial District Court.  This matter has been referred to the undersigned magistrate judge for review, report, and recommendation in accordance with the provisions of 28 U.S.C. § 636 and the standing orders of the court.  For reasons set forth below, it is recommended that the petition be **DENIED**.

### BACKGROUND

Petitioner was charged with possession with intent to distribute cocaine and other drug-related charges.  Prior to trial, a motion to suppress and motion for preliminary hearing were convened.  The Court denied the motion to suppress and found probable cause to charge petitioner.  [Doc. # 4, p. 18]  On March 28, 2007, after a one-day trial, petitioner was convicted of possession with intent to distribute cocaine.  [Doc. # 1, ¶3(b) and (d).]  On April 18, 2007,

1

petitioner was sentenced to seven (7) years at hard labor.  [Doc. # 13, Exhibit 1, p. 180.]  Because petitioner was a "habitual felony offender," it was recommended by the District Attorney's Office that petitioner "be sentenced as a third felony offender in accordance with the provisions of LA. R.S. 15:529.1(b)."  [Doc. # 13, Exhibit 1, p. 26 (dated April 24, 2007).]  In due course, petitioner moved for an appeal and appellate counsel was appointed to represent him.  On July 23, 2007, however, the State agreed to dismiss the habitual felony offender sentence in exchange for the petitioner's dismissal of his appeal of his conviction.[1]  [Doc. # 13, Exhibit 1, p. 199.]

On December 11, 2007, petitioner filed a *pro se* application for post-conviction relief ("PCR") in the Fourth Judicial District Court raising ten claims for relief, all of which attacked the legality of the search and subsequent seizure of the narcotics used in evidence to convict petitioner of the instant narcotics offense.  [Doc. # 1-3, pp. 1-13; *see also* doc. #1, ¶ 7(b)(iv).[2]]  In

---

[1] The penalty for possession with intent to distribute cocaine is "...imprisonment at hard labor for not less than two years nor more than thirty years..." *See* La. R.S.40:967(B)(4)(b).  Louisiana's Habitual Offender statute, La. R.S.15:529.1 provides, "Any person who, after having been convicted within this state of a felony...thereafter commits any subsequent felony within this state, upon conviction of said felony, shall be punished as follows:

If the second felony is such that upon a first conviction the offender would be punishable by imprisonment for any term less than his natural life, then the sentence to imprisonment shall be for a determinate term not less than one-half the longest term and not more than twice the longest term prescribed for a first conviction;

(b) If the third felony is such that upon a first conviction, the offender would be punishable by imprisonment for any term less than his natural life then:

(i) The person shall be sentenced to imprisonment for a determinate term not less than two-thirds of the longest possible sentence for the conviction and not more than twice the longest possible sentence prescribed for a first conviction..."

The portion of the transcript provided by petitioner indicates that the State was confident that it could establish that petitioner's conviction was a third felony conviction; thus, upon proof of the validity of two prior convictions, petitioner would be subject to a sentence of 20 to 60 years at hard labor in accordance with the forgoing statute.  [*See* Doc. # 2, pp. 4-7 where petitioner's attorney advised the Court, "I've already advised him that he is looking at a minimum of twenty years if the State is successful in their habitual offender determination..."]

[2] The petitioner's application for PCR was submitted as an exhibit.  It appears that petitioner raises the following claims:
Claim I: Deputy Stewart lacked reasonable suspicion or reasonable cause to believe criminal activity was afoot to conduct an investigatory stop at 105 Short Pink Street.

a Ruling dated December 12, 2007, and filed on December 17, 2007, the trial judge, Carl V.

Sharp, denied relief as follows:

> All of the grounds and supporting allegations raised by the Defendant are
>
> appealable issues; not grounds for post conviction relief.
>
> [Doc. # 1, ¶ 7(b)(vi); doc. # 4, p. 14.]

On some unspecified date petitioner sought review in the Second Circuit Court of

Appeals arguing three Assignments of Error:

> (1) The trial court erred by denying petitioner's PCR application.

> (2) The trial court erred in admitted the pocket knife into evidence to be heard by jury.

> (3) The trial court erred in not suppressing evidence during trial on the preponderance of
>
> evidence concerning the chain of custody.
>
> [Doc. # 4, pp. 15-23, at p. 17.]

On April 9, 2008, the Second Circuit Court of Appeals granted writs and remanded the

---

Claim II: The search of 105 Short Pink Street was unwarranted.
Claim III: The informant was unreliable.
Claim IV: Deputy Stewart's affidavit and the informant's statement were discordant and paradoxical.
Claim V: Deputy Stewart's evidence on March 28, 2007 contrasted his preceding affidavit.
Claim VI: Deputy Stewart made contradictory statements relating to petitioner's location in Clarence Murphy's
residence and admitted to speculating where petitioner was.
Claim VII: Deputy Stewart surpassed the scope of [*Terry v. Ohio*] when he unfolded the pocket knife.
Claim VIII: The unauthorized unfolding of the pocket knife generated the illicit detention culminating in the illegal
search and seizure inside 105 Short Pink Street.
Claim IX: The pocket knife was tainted.
Claim X: The chain of custody was not adequately established; the evidence was spoiled.  [Doc. # 1-3, pp. 7-11; doc.
# 6, p. 1.]

matter to the Fourth Judicial District Court for further proceedings.  The Court noted,

> This application raises an apparent deprivation of applicant's constitutional right
> to an appeal, an issue which we note on our own motion.  The limited record
> establishes that on April 18, 2007, the applicant gave oral notice of his intent to
> appeal in open court following sentencing.  However, there is no indication in the
> record that the trial court ruled on applicant's request even though the trial court
> later recognized that the assigned errors were appealable...This writ is granted and
> remanded to the trial court to determine whether applicant is entitled to an
> appeal...If applicant is not entitled to an appeal, the trial court is further instructed
> to determine the merits of applicant's underlying post-conviction relief claims
> because they raise (among other things) purported violations of his rights against
> unreasonable searches and seizures...
>
> *State of Louisiana v. William A. Muse*, No. 43509-KH (La. App. 2 Cir. 4/9/2008)
> at doc. # 4, pp. 24-26; *see also* doc. # 1, ¶ 7(b)(ix).

On June 16, 2008, Judge Sharp authored "Additional (or Further) Ruling on Defendant's
Application for Post-Conviction Relief and noted:

> The Second Circuit indicated that it did not have the benefit of the complete
> record.  This Court's examination of the complete record shows that the
> Defendant dismissed his appeal in open court on July 23, 2007, in exchange for
> the State's relinquishment of its right to have him sentenced as a multiple or
> habitual offender.  See certified copies of the minutes of Court from 7-23-07
> attached hereto.  Additionally, defendant is not entitled to a review of the merits

4

of his underlying PCR claims, particularly his allegations of violations of his

constitutional rights against unreasonable searches and seizures; as the Defendant

has waived his right of 'review' concerning appealable issues such as those

forming the basis of his PCR application.

After reviewing the sentencing proceeding, which took place on July 23, 2007, it

appears that the Defendant was clearly informed of the conditions of his waiver.

This court questioned the Defendant closely in order to ensure that he had a full

understanding of the waiver.  The circumstances in the record reflect not only an

informed waiver, but also a knowing and voluntary waiver of Defendant's right to

challenge his conviction and sentence.  This Court explained the "deal" offered by

the D.A., and specifically asked the Defendant whether he realized that he did not

have to agree to this "deal," and whether he understood that he was giving up the

right to have his sentence and conviction "reviewed."  When asked if he

understood what he was doing, Defendant responded affirmatively.  The Court

proceeded to ask Mr. Muse if he had any questions about this "deal."  In the

middle of the proceeding, this Court allowed defense counsel to speak to

defendant in order to explain the conditions of his waiver.  After speaking with

Defendant, Counsel informed the Court that Defendant would proceed with the

"deal" offered by the District Attorney.  When asked again by this Court if he

understood and had any questions, Defendant responded that he did understand.

Next, Defendant proceeded to waive his right to appeal and the right to have his

sentence and conviction "reviewed."

Moreover, there is no indication in the record that the Defendant specifically reserved any rights to file an application for post-conviction relief.  Instead, it is apparent that Defendant's waiver of his right to appeal and right to have his sentence and conviction "reviewed" precludes review thereof, either by appeal or post-conviction remedy.  This is necessarily true as for all appealable issues in Defendant's case, such as those fourth amendment search and seizure issues asserted in Defendant's PCR application.

Finding that the Defendant knowingly and voluntarily agreed to waive his right to appeal and review of his sentence and conviction in exchange for the State's dismissal of its motion to have him sentenced as a habitual offender, this Court's actions of denying defendant's PCR application is in conformity with the agreement between the parties, which is set forth in the record.  Therefore, the defendant is precluded from seeking review of his sentence via appellate or the PCR process.

Doc. # 13, Exhibit 1, pp. 203-05.

On June 19, 2008, petitioner applied for writs of review in the Second Circuit Court of Appeals arguing that his waiver of appeal was not a waiver of his right to seek PCR.  [Doc. # 4, pp. 31-36.]

On August 7, 2008, his writ application was denied; in so doing, the Court of Appeals observed:

We find that the trial court has correctly found the pretrial claims urged by the

applicant in his post-conviction relief application cannot now be urged.

The applicant, in return for the state's agreement not to file a habitual bill of information, expressly agreed not to appeal his conviction.  Such an express agreement not to appeal would make any subsequent attempt to seek review of those claims subject to a procedural objection by the state under La. C.Cr.P. art. 930.4.  **If a trial court may deny a claim of an applicant who inexcusably fails to raise a known claim on appeal, then a fortiori the court may deny review and relief on pretrial claims known to the applicant, when the applicant expressly waived appellate review in return for concessions by the state.** [Emphasis added]

*State of Louisiana v. William A. Muse*, No. 43808-KH (La. App. 2 Cir. 8/7/2008) at doc. # 4, pp. 37-38.

On August 12, 2008, petitioner sought writs in the Louisiana Supreme Court where he argued,

(1) The trial and/or the Second panel (Court of Appeal) erred by finding the Fourth Amendment claims in the application for post-conviction relief appealable.

(2) The trial court and/or Court of Appeal's Second Panel erred by not granting petitioner's application for post-conviction relief in compliance with L.C.Cr.P. art. 930.3.

7

[Doc. # 4, pp. 39-50.][3]

On February 5, 2009, petitioner apparently filed a motion for concurrent sentences.  On April 20, 2009, the trial court denied the petition for writ of *habeas corpus* and the motion for concurrent sentences as follows: "The Defendant is not entitled to Habeas relief.  Defendant is currently in the custody of the State of Louisiana serving a hard labor sentence imposed for his crimes.  The relief requested in both motions...is denied."  The order was filed on May 11, 2009, and mailed to petitioner on May 18, 2009.  [Doc. # 4, pp. 57-58 and 70; doc. # 1, ¶ 7(c)(vi).]  On May 15, 2009, the trial court again denied the petition for *habeas corpus*.  [Doc. # 4, p. 59.]

On May 22, 2009, a writ application filed by petitioner was summarily denied by the Louisiana Supreme Court.  *See State of Louisiana ex rel. William A. Muse v. State of Louisiana*, 2008-2076 (La. 5/22/2009), 9 So.3d 136.  [Doc. # 4, p. 81.]

On May 26, 2009, petitioner sought further review in the Second Circuit Court of Appeals arguing that he was procedurally entitled to *habeas* relief because his appeal and post-conviction rights were exhausted, and, that substantively he was entitled to relief because the evidence was insufficient to sustain the conviction.  [Doc. # 4, pp. 60-68.]

On June 18, 2009, the Court of Appeals granted writs and remanded the matter to the district court noting,

The applicant was convicted of the charged offense and is currently incarcerated.

---

[3] Elsewhere petitioner articulated the issues for review as follows: "Whether a jury's judgment of conviction is based by sufficiency of evidence or admissibility of evidence to support a conviction.  Whether a jury's final verdict of guilty constitutes a conviction.  Whether issues not objected to or preserved in the trial court's record prior to trial thereafter can be cited by the trial court as appealable issues, when such issues are clearly not designated for that purpose in keeping with L.C.Cr.P. art. 920(1).  Whether the unreserved Fourth Amendment claims are properly within the scope of L.C.Cr.P. art. 930.3(1)."  [Doc. # 5, p. 46.]

Therefore, the trial court did not err in determining that *habeas* relief is not

available to him.  However, the trial court erred in failing to consider the petition

as an application for post-conviction relief...This writ is granted and the matter is

remanded to the trial court for consideration of the applicant's petition as an

application for post-conviction relief.

*State of Louisiana v. William A. Muse*, No. 44,781-KH (La. App. 2 Cir. 6/18/209),

at doc. # 4, pp. 76-77.

On June 29, 2009, the Fourth Judicial District directed petitioner to amend his habeas

petition and utilize the form for filing applications for post-conviction relief. [Doc. # 4, p. 79.]

On July 17, 2009, the trial court again denied relief, noting

This is a repetitive filing.  The Defendant urges, as grounds for PCR, a general

claim of denial of due process, and insufficiency of the evidence.  These claims

are not new, and, in fact, were raised in the Defendant's first PCR motion, which

was denied.  Defendant in exchange for the State's dismissal of a habitual

offender motion, waived his rights of appeal.  All of the claims urged in this PCR

motion and in his original PCR motion were appealable issues and are not

grounds for post-conviction relief under these facts.

[Doc. # 1, ¶ 7(ix); doc. # 4, p. 80.]

Thereafter, the instant petition for writ of *habeas corpus* was filed on July 24, 2009.  An

amended petition was submitted on October 13, 2009.  [Doc. # 4.]  Between the two petitions,

petitioner argues the following claims for relief:

(1) His indictment and conviction were based upon perjured testimony.

(2) The evidence presented at his trial was insufficient to support his conviction.

(3) The jury instructions did not accurately cite the legal principles of constructive possession.

(4) Illegally obtained evidence was admitted at his trial.

(5) The state's post-conviction courts did not comply with La. Code Crim. Proc. Ann. art. 930.4(F).

(6) He waived his right to appeal while under duress.

(7) He did not waive his state post-conviction relief rights.

In its December 15, 2009, memorandum order, this court asked the State for argument on whether Muse's claims were procedurally barred on the basis of the independent and adequate doctrine.  [Doc. # 7.]  Specifically, the memorandum order makes clear that the last state court to review claims 1-4 determined that the claims were procedurally defaulted on the basis of LA. CODE CRIM. PROC. ANN. art. 930.4(C), which provides "[i]f the application alleges a claim which the petitioner raised in the trial court and inexcusably failed to pursue on appeal, the court may deny relief."  *Id.* at p. 10.  In its

10

response, the State primarily contended that Muse's claims should be denied on the merits, but also argued that they were procedurally barred as well.  [Doc. # 13.]  In its memorandum of law, the State further argued that petitioner relinquished his right of appeal and review of his conviction "pursuant to the agreement reached between the parties on July 23, 2007, and as noted in the trial court's Additional (Or Further) Ruling on Defendant's 'Uniform Application for Post-Conviction Relief.'"  *Id.* at p. 9.

On May 20, 2010, petitioner was ordered to set forth facts and arguments demonstrating that a review of his *habeas* claims is not barred by the procedural default doctrine.  [Doc. # 15.]  On June 6, 2010, petitioner filed a lengthy response, putting forth various arguments of law and fact as to why his claims should be heard by this court. [Doc. # 16.]  Petitioner again asserted that the waiver, made on July 23, 2007, was made under duress.  *Id.* at p. 7.  While petitioner conceded that he waived his right to a "direct appeal," "post-conviction relief was not barred by the State and petitioner's agreement. The petitioner has the right to post-conviction relief."  *Id.* at p. 9.

Pursuant to the disagreement between the parties as to what rights were waived by petitioner at the July 23, 2007 hearing, the undersigned issued an order directing the District Attorney for the Fourth Judicial District of Louisiana to produce a certified copy of the transcript of the proceeding concerning the waiver, held in front of Judge Sharp. [Doc. # 18.]  On September 28, 2010, the District Attorney's office complied with this order, and filed the transcript that the state alleges shows petitioner gave up his right of appeal and any review of his conviction.  [Doc. # 19.]

**LAW AND ANALYSIS**

11

**I. Standard of Review**

The Antiterrorism and Effective Death Penalty Act ("AEDPA") of 1966, 28

U.S.C. § 2254, governs habeas corpus relief.  The standard of review is set forth in 28

U.S.C. § 2254(d):

> (d) An application for a writ of *habeas corpus* on behalf of a person in custody
> pursuant to the judgment of a State court shall not be granted with respect to any
> claim that was adjudicated on the merits in State court proceedings unless the
> adjudication of the claim -
>
> > (1) resulted in a decision that was contrary to, or involved an
> > unreasonable application of, clearly established Federal law, as
> > determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable
> > determination of the facts in light of the evidence presented in the
> > State court proceeding.

A decision is "contrary to" clearly established Federal law "if the state court

arrives at a conclusion opposite to that reached by . . . [the Supreme Court] on a question

of law or if the state court decides a case differently than [the Supreme Court] has on a set

of materially indistinguishable facts."  *Dowthitt v. Johnson*, 230 F.3d 733, 740-41 (5th

Cir. 2000).  "The 'contrary to' requirement refers to holdings, as opposed to the dicta, of . .

. [the Supreme Court's] decisions as of the time of the relevant state-court decision."  *Id.*

at 740.  Under the "unreasonable application" clause, a federal habeas court may grant the

writ only if the state court "identifies the correct governing legal principle from . . . [the

Supreme Court's] decisions but unreasonably applies the principle to the facts of the

prisoner's case."  *Id.* at 741.

Section 2254(d)(2) speaks to factual determinations made by the state courts.

12

Federal *habeas* courts presume such determinations to be correct; however, the petitioner can rebut this presumption by clear and convincing evidence.  28 U.S.C. § 2254(e).

## II. Waiver of Petitioner's Right to Appeal

Whether claims 1–4 of petitioner's *habeas* petition can be considered on the merits by this court depends on whether petitioner gave up his right to any review of the underlying conviction, in addition to his right to appeal.  As stated above, petitioner concedes that he waived his right to direct appeal, but contends that he is not barred from seeking collateral review of his conviction.  *See* doc. # 16.  By contrast, the state contends that petitioner knowingly waived his right to appeal and to seek post-conviction relief, as evidenced by the July 23, 2007 transcript.  Therefore, the state argues, petitioner is procedurally barred from seeking relief in this court.

For reasons that will be explained more fully below, the undersigned disagrees with the state's position.  Claims 1–4 of petitioner's *habeas* petition are not barred by the procedural default doctrine.  LA. CODE CRIM. PROC. ANN. art. 930.4(C).  Thus, petitioner's claims may be considered on the merits by this court.

### a)        Elements of a valid waiver

It is a well-established rule that a defendant has a right to an appeal.  LA. CONST. art. I, § 19.  A defendant may choose to waive that right, so long as the waiver is an informed one.  *State v. Marcell*, 56,387 (La. 10/1/1975) 320 So.2d 195; *State v. Simmons*, 67,244 (La. 11/10/1981) 320 So.2d 504.  A defendant who waives his right to appeal must know that he has "a right to appeal his sentence and that he [is] giving up that right."  *U.S. v. Portillo*, 18 F.3d 290, 292 (5th Cir. 1994). The Fifth Circuit has held that a

defendant may also validly waive his right to post-conviction relief if the waiver is informed and voluntary. *United States v. Wilkes*, 20 F.3d 651, 653 (5th Cir. 1994).

In an unreported opinion from the Eastern District of Louisiana, the court held that a defendant's waiver of his right to post-conviction relief was both knowing and voluntary, where the agreement "contained an express waiver of defendant's right to post-conviction relief..." *U.S. v. Daugherty*, 07-184, 2009 WL 3736116 (E.D. La. 11/3/2009). In so ruling, the court noted that the specificity of the colloquy between the judge and the defendant during the re-arraignment proceeding. *Id.* at * 2.[4]

The Fifth Circuit has also held that a defendant did not waive his right to *habeas* relief, where the plea agreement he signed prohibited only "appeals, and *habeas* relief is a collateral action, not a direct appeal." *Russell v. Scott*, 70 F.3d 1269 (5th Cir. 1995). However, where a defendant waives both the right to appeal, and the right to post-conviction relief, the Fifth Circuit has refused to consider any collateral attacks on the underlying judgment. *United States v. Wilkes*, 20 F.3d at 652; *see also United States. v. Evans*, 37 F.3d 631 (5th Cir. 1994).

**b)      Transcript of proceedings held July 23, 2007**

---

[4] The Court: ... do you understand that you've waived your right to appeal  any sentence that I may impose, including your right to appeal under the statute which provides for review of a sentence and also you've waived your right to appeal  under the statute which provides for post-conviction remedies, if there's a legal or constitutional basis for you to attack your sentence, except for an appeal reference the Court's ruling on the suppression of evidence, as outlined in your plea agreement. You have preserved the right to appeal that ruling.

Defendant Daugherty: Yes, Your Honor.

The Court: Because you've waived these rights, you may appeal your conviction and/or sentence only under the following exceptions: [*Court herein listed the exceptions*]

Defendant Daugherty: Yes, Your Honor.

The Court: Do you understand that, sir?

Defendant Daugherty: Yes, sir.

*Id*. at * 2.

The issue of a defendant waiving his right to direct appeal versus his right to post-conviction relief at sentencing is one of first impression in this court.  The majority of cases on the subject involve plea agreements, whereby the defendant pleads guilty in return for certain concessions from the state.[5]  *See U.S. v. Wilkes*, 20 F.3d at 653; *U.S. v. White*, 307 F.3d 336, 344 (5th Cir. 2002); *U.S. v. Bennett*, H-05-0449, 2010 WL 3212468 (S.D. Tex. 8/12/2010); *U.S. v. Smith*, 08-0268, 2010 WL 2671990 (S.D. Miss. 6/30/2010); *U.S. v. Jackson*, 08-0311, 2010 WL 2545895 (S.D. Miss. 6/21/2010).

In the case *sub judice*, petitioner made no such guilty plea, and the waiver at issue was not made as part of a plea agreement.  After a one-day jury trial, petitioner was found guilty; it was only during the sentencing hearing that any discussion of waiver of appellate rights occurred.  *See* Tr., July 23, 2007 [doc. # 19].  There is no writing that has been produced to this court detailing the terms of the agreement.  Further, there is no general rule that a defendant who waives his right to appeal also thereby waives his right to post-conviction relief (unless the defendant has made an unqualified guilty plea, as described above; *see* LA. C.Cr.P. art. 881.2(A)(2)).

A review of the transcript does not persuade the undersigned that petitioner waived both his right to appeal and his right to post-conviction relief.  There is no evidence that the petitioner was expressly made aware of his right to post-conviction relief, or that he understood that he was waiving such a right.  The relevant portions of the

---

[5] Of course, where a defendant makes an unqualified guilty plea, he is deemed to have waived his right to appeal non-jurisdictional defects in proceedings prior to his plea, subject to certain limitations.  *See State v. Crosby*, 338 So.2d 584 (La. 1976).  Further, LA. C.Cr.P. art. 881.2(A)(2) provides: "The defendant cannot appeal or seek review of a sentence imposed in conformity with a plea agreement which was set forth in the record at the time of the plea."

transcript are as follows:

> The Court: Now, listen, this is an important decision for you to make which is why I'm spending so much time on it.  The DA says he could put you away for twenty years, at least twenty years without benefit of parole, probation or suspension of sentence if he can prove the right number of serious crimes within the same period.  I don't know what the rap sheet is.  I can remember what it was, but apparently you've been a busy young man, and you have given the tools to the–enough tools to the DA so they can squeeze you like this.  Once again, this is the only offer that's before you right now.  The DA is saying you drop your appeal, drop your complaints about this case that you were convicted of and we'll drop our threat to put you away for twenty years.  You don't have to take this deal. I just have to make sure you understand what you're being threatened with. Do you understand?  Do you really?  You're nodding, but you're not saying anything.

> Mr. Muse: I understand.

> The Court: All right.  Do you have any questions about what you're facing right now?  Anything that you're not clear about?

> Mr. Muse: There's a lot of stuff I'm not--

> The Court: Sir?

> Mr. Muse: It's a lot I'm not clear about.

> The Court: Well, you tell me real quick.  Maybe I can help you.

> Mr. Muse: Well, I don't understand why my–saying the juvenile charges–I'll waive the appeal.

> The Court: Okay.  Let me make sure I understand what you're saying. You said that you're taking the DA up on his offer.  You will give your right to attack your conviction and sentence in a case that we have on the docket today in exchange for the State giving up its right to seek to have you sentenced as a habitual offender.  You want me to restate that?

> Mr. Muse: I understand. I got to ask my lawyer one question.

> ***

16

The Court: I see Mr. Muse is back before the podium.  How is Mr. Muse doing?

Mr. Jay Nolen [*attorney for petitioner*]: I think he's doing much better now, Your Honor.  As I understand it he will take the State's offer.  The State's offer is he dismisses the appeal in this and we would ask the court to direct an order to the Louisiana Appellate Project telling them it is dismissed.  The State will then dismiss the habitual offender proceeding.

The Court: Sir, Mr. Muse, I don't blame you for not being happy about this, but you're in a tough spot.  You understand what you're doing?

Mr. Muse: Yes, sir.

The Court: All right.  You realize that by–your appeal will be dismissed.  You're giving up your rights to review the conviction and the sentence in this case, however, the State is giving up its right to have you sentenced as a habitual offender.  It's a deal.  You understand that?

Mr. Muse: Yes, sir.

The Court: Okay.  Any more questions about this?

Mr. Muse: No, sir.

The Court: Then let the record reflect that the defendant has agreed to dismiss his appeal in this case; that he's agreed to dismiss the appeal of the conviction and sentence of the matter on the docket today...
[Tr. July 23, 2007, 9:19–12:1]

In *Wilkes*, the plea agreement in question included a waiver of the defendant's right not only to direct appeal, but a stipulation that defendant would not "contest his sentence or the manner in which it was determined in any post-conviction proceeding, including, but not limited to, a proceeding under 28 U.S.C. § 2255."  *U.S. v. Wilkes*, 20 F.3d at 652.  The district court found that the defendant "fully understood the waiver of his right to bring an appeal and waived post-conviction motions at the time his plea was accepted."  *Id.* at 653.  Defendant Wilkes did not provide any evidence that he "did not

17

understand the consequences of his actions." *Id.*  As such, the district court denied defendant's subsequently-filed Section 2255 motion.  *Id.* at 652.

Here, the agreement between petitioner and the state is not so clear.  It is true that Judge Sharp advised petitioner that he was "giving up his right to attack his conviction", and further, "giving up his rights to review the conviction"; however, a review of the transcript leads one to believe that defendant understood he was giving up his right to an appeal, not to seek post-conviction relief.  *See* doc. # 19.  Mr. Nolen, petitioner's attorney, advised the judge that he (petitioner) understood that once the appeal was dismissed, the habitual offender proceeding would also be dismissed.  It is not apparent that petitioner also understood that he would be barred from seeking any relief in the future, including post-conviction relief.

Throughout the proceeding, petitioner voiced his confusion on a number of issues. Petitioner had earlier advised Mr. Nolen that he (petitioner) would withdraw his appeal in exchange for concessions by the state; however, at the start of the hearing, petitioner had changed his mind.  Tr. July 23, 2007 [doc. # 19] at 2:20-22.  Petitioner mistakenly voiced his understanding that Judge Sharp was going to recommend petitioner's sentences run concurrently, not consecutively, despite Judge Sharp's repeated declarations to the contrary.  *Id.* at 3:28–5:19; 8:15–9:13.  The Assistant District Attorney, Mr. Nicolas Anderson, also voiced his concern that petitioner did not "understand[] what he [was] talking about", to which Judge Sharp replied, "[h]e may not."  *Id.* at 8:18-23.  This all occurred prior to petitioner's statement that there was "a lot" he was "not clear about." *Id.* at 10:11-12.

18

Therefore, this court holds that, while petitioner waived his right to a direct appeal of his conviction, he did not effect a valid waiver of his right to seek post-conviction relief.  Accordingly, his claims will be determined on their merits.

**III. Petitioner's Claims**

**a) Petitioner's indictment and conviction were based upon perjured testimony**

Evidentiary errors of state law are generally not cognizable on federal *habeas* review, unless the errors were so prejudicial as to result in a denial of a constitutionally fair proceeding.  *Jackson v. Johnson*, 194 F.3d 641, 656 (5th Cir. 1999).  Indeed, "the erroneous admission of prejudicial testimony does not justify *habeas* relief unless the evidence played a 'crucial, critical, and highly significant' role in the jury's determination."  *Id.*

Here, petitioner claims that Deputy Douglas Stewart, the arresting officer at the scene, perjured himself in order to secure an indictment, and this perjury lead to petitioner's conviction.  [Doc. # 1, p. 9.]  Petitioner's argument, at times unclear, appears to rest on a difference in semantics, *i.e.* the informant's use of the word "dope" versus Deputy Stewart's use of the word "crack" to describe the drugs that lead to the arrest of petitioner.  *Id.*  There is certainly no evidence that Deputy Stewart perjured himself, or that petitioner's conviction was the result of perjured testimony.  Petitioner's counsel, Mr. Nolen, explored the issue of "dope" versus "crack" during his cross-examination of the informant.  Tr. Mar. 28, 2007, p. 88 [doc. # 13].  This issue was therefore open for consideration by the jury, who reached a reasonable determination that the difference in

word choice was not grounds for an acquittal.

### b) The evidence presented at petitioner's trial was insufficient to support a conviction

When a habeas petitioner asserts that the evidence presented to the court was insufficient to support his conviction, the limited question before a federal habeas court is whether the state appellate court's decision to reject that claim was an objectively unreasonable application of the clearly established federal law set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979).  *Williams v. Puckett*, 283 F.3d 272, 278-79 (5th Cir. 2002).  A conviction is based on sufficient evidence if, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).  The *Jackson* inquiry "does not focus on whether the trier of fact made the correct guilt or innocence determination, but rather whether it made a rational decision to convict or acquit."  *Herrera v. Collins*, 506 U.S. 390, 402 (1993).  Thus, a conviction may rest on sufficient evidence "even though the facts also support one or more reasonable hypotheses consistent with the defendant's claim of innocence."  *Gibson v. Collins*, 947 F.2d 780, 783 (5th Cir. 1991).

The evidence presented at trial supports the jury's verdict finding petitioner guilty of possession of cocaine with intent to distribute.  Petitioner was present in the home where the cocaine was found, and was seen coming from the location of the cocaine.  Tr. Mar. 28, 2007, p. 93 [doc. # 13].  The informant testified that she had seen the drugs that day when petitioner went to retrieve them.  *Id.* at p. 87.  The quantity was indicative of

possession with intent to distribute.  *Id.* at p. 127.  The evidence presented at trial, viewed

in a light most favorable to the prosecution, was sufficient to support a finding of guilty.

*Jackson v. Virginia*, 443 U.S. 307, 319 (1979).

### c) The jury instructions did not accurately cite the legal principles of constructive possession

Challenges to jury instructions may not form a basis for federal *habeas corpus*

relief unless a petitioner proves that the improper instruction rose to the level of a

constitutional violation.  *Estelle v. McGuire*, 502 U.S. 62, 72.  Indeed, the only relevant

inquiry for this court is whether "the ailing instruction by itself so infected the entire trial

that the resulting conviction violates due process."  *Id.*  Furthermore, when reviewing

whether an allegedly erroneous jury instruction violated due process, the trial court's

instruction "may not be judged in artificial isolation, but must be considered in the

context of the instructions as a whole and the trial record."  *Id.*

Petitioner's argument that the trial judge's instructions to the jury incorrectly

stated the legal principles of constructive possession is without merit.  The charge given

is a correct statement of the law.[6]

### d) Illegally obtained evidence was admitted at trial

Rulings regarding the admissibility of evidence under state law are not reviewable

in *habeas* proceedings unless the rulings "were so extreme as to result in a denial of a

---

[6] The relevant jury instruction was as follows:
"Now, possession may be either actual or what the law calls 'constructive.'  'Actual possession' means just what it says, having an object in one's hand or one's person in such a say as to have direct physical contact and control.  'Constructive possession' means having such a relationship with an object in the nature of ownership or proximity control or dominion.  For example, a person may be in constructive possession of a controlled dangerous substance even though it is not in his physical custody but of a companion if he willfully and knowingly shares with the other right to control it."  Tr. Mar. 28, 2007, p. 165 [doc. # 13].

constitutionally fair proceeding." *Jackson v. Johnson*, 194 F.3d 641, 656 (5th Cir. 1999).

Petitioner's argument concerning what "illegally obtained evidence" was presented at his trial is unclear, but it appears petitioner is contesting the admissibility of a pocket knife that Deputy Stewart found petitioner holding upon his entry into the residence.  Tr. Mar. 28, 2007, p. 93 [doc. # 13].  Deputy Stewart viewed cocaine residue on the blade.  *Id.* at p. 94.  After finding approximately 60 rocks of crack cocaine in the residence, Deputy Stewart determined that petitioner had been using the knife to cut the cocaine.  *Id.* at p. 94-95.  There is no indication that the knife was obtained illegally; Deputy Stewart had been told by an informant that the petitioner was in possession of crack cocaine and thus asked to search the residence.  The owner of the residence allowed Deputy Stewart to enter, whereby the deputy encountered petitioner holding a knife.  To the extent that petitioner is arguing that the knife was "illegally obtained," petitioner's argument fails.

### e) The state's post-conviction courts did not comply with Louisiana Code of Criminal Procedure Ann. art. 930.4(F)

Petitioner's argument in support of this claim is also unclear.  To the extent that petitioner reiterates his argument that while he waived his right to appeal, but not his right to seek post-conviction relief, this argument is moot for the reasons described *supra*.

### f) Petitioner waived his right to appeal while under duress

As stated above, a defendant has a constitutional right to an appeal.  La. Const. art. I, § 19.  Any waiver of that right must be informed, and the defendant must know that "he has a right to appeal his sentence and he [is] giving up that right."  *U.S. v. Portillo*, 18

F.3d 290, 292 (5th Cir. 1994); *see also State v. Marcell*, 56,387 (La. 10/1/1975) 320

So.2d 195; *State v. Simmons*, 67,244 (La. 11/10/1981) 320 So.2d 504.

In his supplemental petition to the underlying motion, filed August 4, 2009, petitioner claims that his waiver of appeal was invalid because the state "threat[ened] to put petitioner away for twenty years." [Doc. # 2.] In other words, petitioner claims that the state "made" him waive his right to appeal by threatening him with an enhanced sentence under the habitual offender statute, LA. R.S. 15:529.1(b).

However, petitioner's argument is defeated by his response to the undersigned's order dated May 20, 2010 (doc. # 15). In his response, filed June 9, 2010, petitioner concedes that he waived his right to appeal: "The petitioner in this case waived his right to a 'direct appeal.' The petitioner should not have been prohibited in the State courts from 'post-conviction relief.'" [Doc. # 16, p. 12.] In addition, the transcript of the hearing with Judge Sharp shows that petitioner made a knowing and voluntary waiver of his right to appeal in exchange for the state's giving up its right to seek an enhanced sentence based on the petitioner's previous convictions. Accordingly, petitioner's claim that his appeal was made under duress is unconvincing.

### g) Petitioner did not waive his state post-conviction relief rights

Petitioner again asserts, in his supplemental petition to the underlying motion, that he has the right to seek post-conviction relief. [Doc. # 2.] As this issue was dispensed with *supra*, it will not be re-examined here.

### III. Request for an Evidentiary Hearing

Under Rule 8(a) of the *habeas* Court Rules, "the judge must review the answer

23

[and] any transcripts and records of state proceedings...to determine whether an evidentiary hearing is warranted."  In making this determination, a federal court must consider whether a hearing "could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal *habeas* relief."  *Schriro v. Landrigan*, 550 U.S> 465, 474 (2007).  "Because the deferential standards prescribed by § 2254 control whether to grant *habeas* relief, a federal court must take into account those standards in deciding whether an evidentiary hearing is appropriate."  *Id.*  "[I]f the record refutes the applicant's factual allegations or otherwise precludes *habeas* relief, a district court is not required to hold an evidentiary hearing."  *Id.*

As the forgoing discussion indicates, the record demonstrates that none of petitioner's claims have merit.  Accordingly, an evidentiary hearing and the appointment of counsel for the hearing are not warranted.

## CONCLUSION

For the reasons stated above, it is recommended that the petition for writ of habeas corpus [docs. # 1, 2] under 28 U.S.C. § 2254 be **DENIED**.  Under the provisions of 28 U.S.C. § 636(b)(1)(C) and FRCP Rule 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof.  A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing.  Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACHING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED at Monroe, Louisiana, this 14th day of October, 2010.

KAREN L. HAYES
U. S. MAGISTRATE JUDGE